**FEDERAL TRADE COMMISSION, Plaintiff,**

v.

**TRW INC., Defendant.**

**Civ. A. No. 3–91CV2661–H.**

United States District Court, N.D. Texas.

Dec. 10, 1991.

Hugh Whiting, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for TRW Inc.

Arthur Bennett Levin, Stephanie Pax Flanigan, S.E. Pietrafesa, Attys. David Medine, Acting Associate Director for Credit Practices, F.T.C., Washington, D.C., for F.T.C.

## CONSENT ORDER

SANDERS, Chief Judge.

This action was commenced by the filing of the Complaint herein. The parties have been represented in these proceedings by the attorneys whose names appear hereafter. The parties have agreed to the entry of this Consent Order without trial or adjudication of any issue of fact or law. The parties having requested the Court to enter this Consent Order, it is by the Court this 10 day of December, 1991 ORDERED, ADJUDGED, AND DECREED that:

### I.

1. This Court has jurisdiction of the subject matter herein and of the parties hereto. For purposes of this Consent Order only, the parties agree that the Complaint states a claim upon which relief may be granted against TRW Inc. under the

Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, as amended.

2. This Order is for settlement purposes only and neither its execution by the parties nor its entry by the Court constitutes an admission by TRW Inc. that the law has been violated as alleged in the Complaint or that the facts alleged in the Complaint, other than the jurisdictional facts, are true. While TRW Inc. believes that entry of this Order is in its interest, TRW Inc. specifically denies the allegations of the Complaint and denies that it has violated any law as alleged in the Complaint or otherwise.

3. For purposes of this Order, the following definitions shall apply:

a. "TRW" means TRW Inc., its successors and assigns, and its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division or other device.

b. The Fair Credit Reporting Act ("FCRA") refers to 15 U.S.C. §§ 1681–1681t, as amended or as it may hereinafter be amended.

c. The terms, "Person," "Consumer," "Consumer Report," "Consumer Reporting Agency," "File," and "Employment Purposes" are defined as set forth in §§ 603(b), (c), (d), (f), (g), and (h), respectively, of the FCRA, 15 U.S.C. §§ 1681a(b), 1681a(c), 1681a(d), 1681a(f), 1681a(g), and 1681a(h).

d. "Credit Information" means the information TRW maintains bearing on any of the characteristics listed in § 603(d) of the FCRA with respect to any Consumer that TRW obtains from Subscribers, court records or any other source and from which TRW creates Consumer Reports.

e. "Full Identifying Information" means full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number.

f. "Mixed File" refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report.

g. "Prescreening" means the process whereby TRW, utilizing Credit Information, compiles or edits for a client a list of Consumers who meet specific criteria and provides this list to the client or a third party (such as a mailing service) on behalf of the client for use in soliciting those Consumers for an offer of credit.

h. "Serious Derogatory Information" means information indicating a bankruptcy adjustment plan, bankruptcy liquidation reorganization, charge off, collection account, charge off now paying, deed in lieu, foreclosed, foreclosure proceedings, government claim, insurance claim, paid by dealer, paid charge off, paid collection account, paid foreclosure, paid repossession, repossession, or Subscriber cannot locate.

i. "Subscriber" means any person who furnishes Credit Information to TRW or who requests or obtains a Consumer Report from TRW, excluding Consumers.

## II.

In connection with the furnishing of Consumer Reports, TRW shall be, and hereby is, enjoined from failing to comply with the FCRA. TRW shall be enjoined from failing to:

1. Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files, including but not limited to:

a. Continuing its current efforts to improve its information gathering, storing, and generating systems to reduce the occurrence of Mixed Files, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information; and

b. Not later than July 31, 1992, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Files, once known;

2. Follow reasonable procedures to assure maximum possible accuracy of the information concerning the Consumer

about whom the Consumer Report relates, including but not limited to:

a. Maintaining reasonable procedures, before Credit Information from TRW's Subscribers is utilized by TRW, to detect logical errors in such Credit Information; and

b. Within one hundred twenty (120) days of the date of this Order, advising its current Subscribers, and thereafter advising new Subscribers, that they will be expected to attempt to (i) obtain Full Identifying Information from Consumers and (ii) use Full Identifying Information when reporting Credit Information to TRW and when requesting Consumer Reports from TRW;

3. Reinvestigate items of information, the completeness or accuracy of which is disputed by a Consumer, and thereafter record in its system the current status of such items of information, when the Consumer directly conveys the dispute to TRW and TRW does not have reason to believe the dispute is frivolous or irrelevant;

a. Such reinvestigation shall include but not be limited to:

i. Completing any reinvestigation, *i.e.*, verifying, deleting, or modifying all disputed items in the Consumer's File, within thirty (30) days of receipt of the Consumer's dispute by TRW; provided, however, that if TRW in good faith cannot determine the nature of the Consumer's dispute, TRW shall attempt to determine the nature of the dispute by contacting the Consumer by mail or telephone within five (5) business days of receiving the Consumer's dispute, and complete its reinvestigation within thirty (30) days of the Consumer's response if TRW in good faith can then determine the nature of the Consumer's dispute;

ii. Stating to the source used to verify the disputed information, or the Subscriber who provided the disputed information to TRW, the nature and substance of the Consumer's dispute;

iii. Accepting the Consumer's version of the disputed information and correcting or deleting the disputed item, when the Consumer submits to TRW documentation obtained from the source of the item in dispute confirming that the disputed information on the Consumer Report was inaccurate or incomplete, unless TRW in good faith has reason to doubt the authenticity of the documentation, in which case TRW need not accept the Consumer's version of the dispute if it reinvestigates the dispute by contacting the source of the item and verifies that the documentation is not authentic; and

iv. Employing reasonable procedures designed specifically to reinvestigate disputes from Consumers that result from Mixed Files;

b. So long as TRW maintains reasonable procedures, including procedures for handling disputes received by TRW at offices other than the TRW consumer assistance office(s) designated by TRW for receipt of disputes from Consumers, to comply with the provisions of paragraph II.3.a., TRW shall not be deemed in violation of such provisions in any instance in which TRW is unable to comply with such provisions due to factors beyond its control;

4. Maintain reasonable procedures so that items disputed by a Consumer, which are deleted or corrected as inaccurate or unverifiable upon reinvestigation, do not subsequently appear on Consumer Reports pertaining to that Consumer, including but not limited to:

a. Completing by December 1, 1991, implementation of procedures to assure that Serious Derogatory Information deleted from a File as a consequence of a Consumer's dispute of such information does not subsequently appear on that Consumer's Consumer Report; provided, however, that if, after TRW has deleted such information from the File, TRW reverifies such information, TRW may reinsert such information in the File and report such information on subsequent Consumer Reports concerning that Consumer if, and only if, TRW advises the Consumer in writing that the information has been reinserted; and

b. Continuing its current efforts, which TRW will in good faith attempt to complete by December 31, 1992, to alter its system so that the conditions that apply to Serious Derogatory Information in paragraph II.4.a. also apply to other information which is disputed by the Consumer regarding the status of any item shown on the Consumer Report;

5. Make clear and conspicuous disclosure to any Consumer, in connection with any reinvestigation in which an item has been deleted, of the Consumer's right to request TRW, and of TRW's obligation pursuant to § 611(d) of the FCRA, to furnish notification to users of Consumer Reports who have received a Consumer Report from TRW for that Consumer within the past two (2) years for Employment Purposes, or within the past six (6) months for any other purpose, that an item has been deleted;

6. Within one hundred eighty (180) days of the date of this Order, require in TRW's contracts that those who obtain Consumer Reports from TRW in the form of lists developed through Prescreening make a firm offer of credit to each Person on the lists and take reasonable steps to enforce those contracts;

7. Within one hundred eighty (180) days of the date of this Order, require in its contracts with Subscribers, and take reasonable steps to enforce such requirements, that whenever a Subscriber purchases a Consumer Report from TRW for resale to a Person who intends to use the Consumer Report for Employment Purposes pursuant to § 604(3)(B) of the FCRA:

a. Such Subscriber identify that it intends to resell the Consumer Report for Employment Purposes at the time the Subscriber requests the Consumer Report from TRW;

b. Such Subscriber, upon the Consumer's request, provide to the Consumer who is the subject of the Consumer Report the name and address of the Person to whom the Consumer Report was resold; and

c. Such Subscriber resell a Consumer Report for Employment Purposes only if

that Consumer Report was originally obtained from TRW for Employment Purposes pursuant to Section II.7.a. above;

8. Whenever TRW provides a Consumer Report for Employment Purposes as described in Section II.7. above, and such Consumer Report contains public record information that is likely to have an adverse effect upon a Consumer's ability to obtain employment, either;

a. Maintain strict procedures designed to insure that public record information that is likely to have an adverse effect on a Consumer's ability to obtain employment is complete and up-to-date as provided in § 613(2) of the FCRA; or

b. At the time such public record information is reported to the Subscriber, notify the Consumer of the Subscriber's name and address and that:

i. Such public record information was included in the Consumer Report that was provided to the Subscriber;

ii. The Subscriber intended to resell the Consumer Report for Employment Purposes to another Person; and

iii. The Consumer may contact the Subscriber to learn the name and address of the Person to whom the Subscriber resold such Consumer Report for Employment Purposes;

9. Beginning December 31, 1992, disclose to each Consumer who requests his or her Consumer Report any risk score that is provided after that date to recipients of the Consumer Report whose identity is required to be disclosed under § 609(a)(3) of the FCRA, together with an explanation of risk scores.

### III.

For the five (5) year period following the entry of this Order, TRW shall measure, monitor, and test the extent to which changes in TRW's computer system, including its algorithms, reduce the incidence of Mixed Files.

1. In complying with this Section, TRW shall submit, within one hundred eighty (180) days of the date of this Order, for approval to the Associate Director of the

Division of Credit Practices of the Federal Trade Commission ("ADDCP"):

a. A proposed methodology for establishing a baseline against which changes may be measured, monitored, and tested; and

b. A proposed methodology for accurately measuring, monitoring, testing, and reporting the effects of changes made against the baseline established under paragraph III.1.a.

2. For five (5) years following the entry of this Order, TRW shall submit annually to the ADDCP, in writing, the results of its comparison using the methodologies agreed upon in paragraph III.1. above, and to the extent not otherwise provided, shall include with such reports the results of a statistically significant analysis to determine the incidence of Mixed Files.

### IV.

TRW shall gather on an annual basis for five (5) years following the entry of this Order and make available to the ADDCP the following information:

1. The approximate total number of Consumer Reports issued by TRW to Consumers;

2. The total number of Consumer Reports for which a dispute is conveyed to TRW by Consumers;

3. The approximate total number of disputed items; and

4. The total number of each type of dispute received by TRW as denoted on TRW's form 102 or any successor forms.

### V.

Except for Section IV above, TRW shall maintain for five (5) years and upon request make available to the ADDCP for inspection and copying, documents demonstrating compliance with the requirements of this Order. Such documents shall include, but are not limited to, all contracts governing Subscriber access to or use of Credit Information, all written reports or memoranda concerning the testing, auditing, or monitoring of its systems, instructions given to employees regarding compli-

ance with the provisions of this Order, and any notices provided to Subscribers in connection with the terms of this Order.

### VI.

TRW shall deliver a copy of this Order to all present and future management officials having administrative, sales, advertising, or policy responsibilities with respect to the subject matter of this Order.

### VII.

For the five (5) year period following entry of this Order, TRW shall notify the ADDCP at least thirty (30) days prior to any proposed change in TRW such as dissolution, assignment, or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, or any other change in the corporation that might affect compliance obligations arising out of this Order.

### VIII.

TRW shall, within one hundred eighty (180) days of service of this Order, deliver to the ADDCP a report, in writing, setting forth the manner and form in which it has complied with this Order as of that date. The FTC shall keep such report and its contents, or any report, document, or other information provided under Sections III, IV, or V above, or any notification provided under Section VII above, strictly confidential, in accordance with the FTC Rules of Practice.

### IX.

If the FCRA is amended (or other similar federal legislation enacted) or the FTC issues any interpretation of the FCRA, relating to any obligation imposed on TRW herein, which creates any new requirement that directly conflicts with any obligation imposed on TRW by this Order, TRW may conform the manner in which it conducts its business as a Consumer Reporting Agency or its use of Credit Information to the requirements of such new statutory provision or interpretation; provided however that, TRW shall notify the ADDCP

promptly if it intends to change its conduct as provided for in this Section, and provided further that nothing in this provision shall limit the right of the FTC to challenge TRW's actions hereunder and to seek enforcement of TRW's obligations under this Order. For purposes of this Order, and by way of example only, a "direct conflict" between this Order and a new statutory amendment or interpretation shall include a requirement in any such amendment or interpretation that a Credit Reporting Agency complete a task or obligation addressed in this Order in a greater period of time than is specified in the Order.

### X.

If, after the entry of this Order, the parties should have any dispute arising out of or relating to this Order or the parties' respective rights and duties hereunder, the Court will entertain no motion for enforcement of any provision of this Order unless counsel for both parties shall have previously conferred concerning, and in good faith tried to resolve, all of the disputed issues. At the time of filing any motion relating to enforcement of this Order, counsel for the moving party shall serve and file a certificate of compliance with this Section.

### XI.

This Order does not address the current practice engaged in by TRW of compiling, for sale to clients, lists of Consumers with certain credit-related characteristics, based in whole or in part on Credit–Information, which lists are not developed through Pre-screening and it does not in any way limit the right of the FTC to take any appropriate action after entry of this Order pursuant to the FCRA relating to this practice, nor does it limit in any way TRW's defense of any such action.